**Edith KRAFT, Appellant,**

v.

**Lynn R. KRAFT and Norbert Kraft,
Appellees.**

**No. 2399.**

Municipal Court of Appeals for the
District of Columbia.

Argued July 8, 1959.

Decided Nov. 19, 1959.

Mark P. Friedlander, Washington, D. C., with whom Mark P. Friedlander, Jr., and Blaine P. Friedlander, Washington, D. C., were on the brief, for appellant.

Stanley B. Frosh, Washington, D. C., for appellees.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

The respondent-appellant has taken this appeal from a habeas corpus proceeding for the custody of Lynn R. Kraft, a minor child born to the parties. Petitioner-appellee filed for the writ alleging that the child was being held in violation of a Maryland court decree which granted him an absolute divorce from appellant and custody of their daughter. Because of the errors assigned, a recitation of the facts essential to both suits is required.

The Krafts were married in the District of Columbia in 1948. Subsequently, they moved to Maryland and resided there for about five years prior to the divorce action. Their only child, the center of this controversy, was born on May 23, 1957. In June 1958 appellant left appellee and their

child and went to New York City, failing to inform him or her parents of her whereabouts. She remained away ten weeks, during which time appellee had possession of and cared for the child. In the meantime, appellee filed for divorce in Maryland on August 8, 1958, on the ground of appellant's adulterous acts with certain men, and prayed for the custody of their daughter. Because appellant's whereabouts were then unknown, the Maryland court ordered publication of service of process in a local newspaper for four successive weeks, which commenced on August 14, 1958.[1] In late August, appellant returned to the Maryland home. It was conceded in the trial court that she was a domiciliary resident of Maryland at least until the first part of October 1958. Sometime later she moved to the District of Columbia, taking the child with her. Concerning the divorce, the following testimony was also adduced in the trial court:

"Q. Mrs. Kraft, did there come a time when you learned that your husband had filed a divorce action against you in the State of Maryland? A. There was.

"Q. Did you look in the papers? A. I did.

"Q. What did you see? A. I saw that there was divorce proceedings against me.

"Q. What did you do then? A. I consulted a lawyer, Mr. Moorman.

\* \* \* \* \* \*

"Q. Did there come a time when you were completely aware of the action your husband had brought against you in the State of Maryland? A. I did.

"Q. And at that time you were a resident of the State of Maryland, were

1. This procedure is authorized by Rules 104 and 105 of the Maryland Rules of Procedure, see 9 Annotated Code of Maryland, Ch. 100, §§ 104, 105 (Michie 1957).

you not? * * * A. Actually a resident, yes."

A hearing was held and testimony was taken by an Examiner in Equity of the Maryland court. His report was filed in November 1958. A final decree was issued by the Maryland court in December 1958 granting the husband an absolute divorce on the grounds of adultery and awarding him custody of the child. However, at the time of the hearing and the issuance of the decree Mrs. Kraft was apparently a resident of the District of Columbia. There was evidence that after consulting with counsel Mrs. Kraft elected not to appear and defend the Maryland action. Mr. Kraft instituted this suit in the District in January 1959.

The trial court found the Maryland decree to be valid and entitled to full faith and credit under the Constitution of the United States; that the judgment was res judicata as to conditions then existing; and that the question before the court was what conditions, if any, had changed since the Maryland judgment. The court found further that appellant had not shown any changed conditions, nor had she carried her burden of proof as to her own fitness to have custody. The court concluded that:

"Upon the above findings based *first* upon the best interest and welfare of the minor child and *secondly,* in the light of the unfitness of the mother at this time, the Court concludes that the respondent is not only unlawfully detaining the minor child in the District of Columbia contrary to the Maryland decree but that there has been no satisfactory evidentiary showing of a change of conditions since the issuance of the Maryland court's award of custody, and therefore the minor child should be returned to the petitioner * * *."

No argument is made concerning the child's domicile in relation to the Maryland decree, nor is the jurisdiction, of the trial court over all parties challenged. However, appellant raises several contentions with the thrust of her position, both in her brief and on oral argument, being that the reliance upon and the interpretation given to the Maryland judgment by the trial court violated the rule of May v. Anderson.[2] She maintains that the right to custody of a child by its mother is a personal right which cannot be adjudicated unless the trial court [Maryland] has personal jurisdiction over the person possessing the right.[3] From this premise she reaches the conclusion that Maryland, having no personal jurisdiction, could not bind her by its decree, and that the part of the judgment which determined custody was invalid, neither entitled to the dignity of full faith and credit nor sufficient to call forth the effect of res judicata.[4] Accordingly, she maintains that the basis for the Municipal Court's ruling did not exist, thereby making the entire ruling erroneous. No attack has been made upon the validity of the divorce.

The short answer to this claim and to appellant's other assignments of error is that the trial court found it "would make this same determination upon the evi-

2. 1953, 345 U.S. 528, 73 S.Ct. 840, 97 L. Ed. 1221.

3. Appellant cites, for this proposition, other than May v. Anderson, ibid., the cases of Pennoyer v. Neff, 1878, 95 U.S. 714, 24 L.Ed. 565, and Estin v. Estin, 1948, 334 U.S. 541, 68 S.Ct. 1213, 92 L. Ed. 1561.

4. In her assertion that Maryland lacked personal jurisdiction, appellant says that for it to exist she would have to be personally served or appear before that court and that neither occurred. However, that is not the only method by which personal jurisdiction may be obtained, see Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; and the constitutionality of Maryland law as such, supra, note 2, is not challenged here.

dence in the trial even though there had been no prior adjudication by another court on the same question." The evidence was quite sufficient to support that finding. Furthermore, we recently had occasion to reiterate that the judgment of the trial court in a custody proceeding will not be upset absent a manifest abuse of judicial discretion.[5] However, because appellant has raised a substantial argument through May v. Anderson, supra, we feel it appropriate, especially considering the frequency with which Maryland and Virginia decrees appear before our courts, to make further comment.

■■ It is well to remember that significance is given to broad and general statements of law only by comparing the facts from which they arise with those facts to which they supposedly apply. In May, Mr. Justice Burton said:

"* * * we have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her in personam. * * *"[6]

Although the question was answered in the negative, the above-quoted statement alone demonstrates why that rule, although applicable, does not govern this case. Appellant conceded that she was domiciled in Maryland when that suit was filed and she was domiciled there during the publication of service of process. She testified that she was a resident of Maryland and she had read the notice as published. The trial court found that she had knowledge of the notice and other evidence was also present to support that finding. We believe there was sufficient showing of personal jurisdiction. Moreover, even had she not read the published notice, it appears that she received all the notice to which she was entitled under Maryland law.[7] It therefore seems that, aside from nonappearance, the one fact of substance common to this case and the May case is that the mother was not within the jurisdiction when the decree was entered. But the May case turned on the question of *jurisdiction,* not physical presence. There the Wisconsin court never acquired personal jurisdiction; here the Maryland court acquired personal jurisdiction and never lost it. Accordingly, we hold that the Maryland judgment and the award of custody were valid and binding upon appellant.

■ Concerning the question of full faith and credit and res judicata, it is the rule in this jurisdiction that if a foreign court hears the issues and then makes a judicial determination of custody, that determination to the extent of the hearing is conclusive in this jurisdiction as to conditions then existing.[8] Since there appears to have been a full hearing on the issue of custody in the Maryland proceeding, the trial court did not offend that rule.

■ In conclusion then, we believe that the requirement of the May case is satisfied when jurisdiction over the absent party exists, but it does not mean that for the requisite jurisdiction a party must be either

5. Hitchcock v. Thomason, D.C.Mun.App., 148 A.2d 458, 459, rev'd sub nom. on other grounds, Thomason v. Thomason, D.C.Cir., —— F.2d ——. See Bartlett v. Bartlett, 1954, 94 U.S.App.D.C. 190, 193, 221 F.2d 508, 512, and cases cited therein.

6. 345 U.S. at page 533, 73 S.Ct. at page 843, 97 L.Ed. at page 1226.

7. Maryland Rules of Procedure, supra, note 2.

8. Dawn v. Dawn, 1952, 90 U.S.App.D.C. 226, 194 F.2d 895; Boone v. Boone, 1945, 80 U.S.App.D.C. 152, 154–155, 150 F.2d 153, 155–156. Cf. Kovacs v. Brewer, 1958, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008.

**914**

personally served within the borders of a state or physically present to contest the claim of custody which is adverse to his interest.

Affirmed.