**Charles E. GRAY, Appellant,**

v.

**CITIZENS BANK OF WASHINGTON
Formerly McLachlen National
Bank, Appellee.**

No. 90–1021.

District of Columbia Court of Appeals.

Argued April 11, 1991.
Decided Feb. 4, 1992.
Rehearing En Banc Granted
and Opinion Vacated April 13, 1992.

Thomas R. Nedrich, Falls Church, Va., for appellant.

Katherine K. Brewer, with whom Ira Michael Shepard, Washington, D.C., was on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and REILLY, Senior Judge.

FARRELL, Associate Judge:

■ On this appeal from an order dismissing the complaint on the ground that plaintiff failed to state a claim upon which relief could be granted, Super.Ct.Civ.R. 12(c) (1991), plaintiff asks us to create a novel exception to the general rule in the District of Columbia that an at-will employee may not sue a former employer in tort for wrongful discharge. Recently, this court adopted "a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 34 (D.C.1991). Appellant, in effect, asks us to extend that "very narrow exception" to embrace a claim, such as he alleges, that the employee was discharged for reporting illegal activities by other employees to his employer. Concluding under our decisions that a division of the court is not free to expand the *Adams* exception, we affirm the dismissal of the complaint.

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true." *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979). Thus construed, the complaint here alleged that plaintiff, a bank official, was fired after reporting to a senior official on numerous occasions evidence of possible illegal conduct by another managerial employee related to bank operations. The complaint alleged that the firing—which ostensibly derived from plaintiff's own failure to follow bank audit procedures—was a pretext motivated by the bank's desire to conceal evidence of illegal activities from federal regulatory officials, bank shareholders and depositors, and other concerned third parties. The trial judge dismissed the complaint apparently in reliance on our "at-will" cases, including *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C.1989).

In *Adams, supra,* the court summarized our past decisions enunciating the "long

... settled [principle] in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." 597 A.2d at 30. We noted in particular our holding in *Sorrells* that no cause of action would lie there because "no statutorily declared public policy support[ed] appellant's claim of wrongful discharge in this case." *Id.* at 31 (internal quotation marks omitted) (quoting *Sorrells*, 565 A.2d at 289). By contrast, in *Adams* the jury had found that the defendant "discharged Adams for his refusal to violate a municipal regulation that prohibits the operation of a vehicle without a valid inspection sticker." *Id.* at 33. We pointed out that, "[u]nlike the plaintiff in *Sorrells*, Adams can point to 18 DCMR § 602.4 (1987) as an officially declared public policy." *Id.; cf. Sorrells*, 565 A.2d at 289. We referred to, and found persuasive, a rule adopted by the Supreme Court of Texas "permit[ting] a fired at-will employee to sue for wrongful discharge only if the firing was 'for the sole reason that the employee refused to perform an illegal act.'" *Id.* (citation omitted). To illustrate the narrowness of the "Texas rule" we were adopting, we pointed to another Texas decision which "affirmed the intermediate court's refusal ... to extend the exception to cover a claim by an employee that he was discharged for reporting illegal activities by other employees to his employer." *Id.* at 34. In the latter case, unlike the situation in *Adams*, the plaintiff was not forced "to choose between breaking the law and keeping his job." *Id.* The narrow exception we adopted in *Adams* was restricted to the latter situation.

■ Of course, *Adams* itself did not involve a claim of wrongful discharge by an employee-"whistleblower"; its citation to the Texas decision rejecting that extension may arguably be termed dictum. *Sorrells* also did not require the court to consider whether a nonstatutory policy relating to reporting of illegal activity justifies an exception to the at-will doctrine.[1] Nevertheless, we think *Sorrells* and *Adams* together demonstrate the extent of *and* limitations upon an exception to the at-will doctrine under current District of Columbia law. It may well be, as appellant urges, that the "public policy" urged in *Sorrells*, which was anchored in no "*officially declared* public policy," *Adams*, 597 A.2d at 33 (emphasis added), and which we therefore rejected as the basis for an exception, had considerably less to commend it than a policy of protecting persons who report suspected unlawful behavior;[2] we express no opinion on that issue. The fact remains that we have so far insisted upon that anchor before departing from a doctrine repeatedly characterized as "long ... settled," *id.* at 30, or "well-settled" in the District of Columbia. *Sorrells*, 565 A.2d at 289. We are of the view that, absent a relevant legislative change, only the *en banc* court may undertake the extension appellant urges upon us.

The judgment of the Superior Court is
*Affirmed.*

SCHWELB, Associate Judge, concurring:

I join the opinion of the court, but only because I recognize that dictum, even ill-considered dictum, sometimes becomes so pervasive that it becomes embedded in the "warp and woof" of our law. I "go along" with the decision to affirm with some reluctance, because this court has never been called upon to decide, and thus should not be deemed to have conclusively decided, whether a "whistle-blower" situation such as that alleged to exist here would fall within a sound public policy exception to the "at-will" doctrine. On the merits, I believe that we ought to give serious consideration to fashioning an exception which would cover the present case, and that en banc consideration may well be warranted.

---

1. *But see Hall v. Ford,* 272 U.S.App.D.C. 301, 856 F.2d 255 (1988) (applying District of Columbia law in barring suit for wrongful termination of employee who made "public and private" statements about violations of intercollegiate rules and guidelines).

2. In *Sorrells*, the discharged employee essentially asked the court merely "to 'broaden' the policies expressed in the [District of Columbia] Human Rights Act and to fill a perceived 'gap' in the Act," whose coverage was already "very broad." *Sorrells*, 565 A.2d at 289.

## I

In *United States v. Alston,* 580 A.2d 587, 594 n. 12 (D.C.1990), this court reiterated some important principles which are perhaps honored by lawyers, and sometimes by courts, more in the breach than in the observance:

In *Kraft v. Kraft,* 155 A.2d 910 (D.C. 1959), the court pointed out that:

It is well to remember that significance is given to broad and general statements of the law only by comparing the facts from which they arise with those facts to which they supposedly apply.

155 A.2d at 913. *See also Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), where the Supreme Court aptly stated:

It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the order under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expression transposed to other facts are often misleading.

With these principles in mind, I briefly examine in chronological order not only the cases cited by the majority, but also the authorities on which those decisions are based. In *Pfeffer v. Ernst,* 82 A.2d 763 (D.C.1951), we held primarily that the plaintiff housekeeper had not been offered a contract to reemploy her in her old position, and that the defendant was not liable in tort for refusing to do so. In *Taylor v. Greenway Restaurant, Inc.,* 173 A.2d 211 (D.C.1961), a bartender and night manager was discharged without being provided a week's notice, and the court held that no such notice was required. This court pointed out in both opinions that employment for an indefinite period is terminable at the will of either party, but neither case addressed the question whether this is true where the employer is motivated by a desire to prevent disclosure of criminal activity. I do not think that these decisions can properly be viewed as binding precedents with respect to an issue which is squarely presented here, but which was not before the court in *Pfeffer* or *Taylor.*

Later decisions in this jurisdiction are likewise inconclusive. *Ivy v. Army Times Publishing Co.,* 428 A.2d 831 (D.C.1981) (en banc) was an unpublished memorandum opinion and judgment, and the petition for rehearing en banc was denied when the full court split 4:4. In *Sorrells v. Garfinckel's, et al.,* 565 A.2d 285, 289 (D.C.1989), the court pointed out that no "statutorily declared public policy" supported the plaintiff's claim, but no non-statutory public policy was at issue either.

Finally, in *Adams v. Cochran,* 597 A.2d 28 (D.C.1991), this court adopted a non-statutory public policy exception to the "at-will" doctrine where the plaintiff had been relegated to a choice between violating the law and being discharged.[1] We could not and did not hold in *Adams* that this was the *only* public policy exception, because that question was simply not presented. The opinion does, however, contain dictum which, if adopted as a holding of the court, would apparently require us to decide this case in the Bank's favor. *Id.* at 33–34.

In my opinion, pronouncements which go well beyond the questions presented in the case *sub judice* are generally inadvisable. When we opine on matters that are not before us, we may miss a golden opportunity to remain silent. An issue is justiciable only when the parties' rights may be immediately affected by a judicial decision resolving it. *Smith v. Smith,* 310 A.2d 229, 231 (D.C.1991). Discussion that goes beyond the controversy before the court is often unreliable because, among other reasons, it "was not grounded in the facts of the case and the judges may therefore have lacked an adequate experiential basis for it...." *United States v. Crawley,* 837 F.2d 291, 293 (7th Cir.1988). Moreover, the

---

**1.** In *Hall v. Ford,* 272 U.S.App.D.C. 301, 856 F.2d 255 (1988), the court held, relying on *Pfeffer, Taylor,* and *Ivy,* that the District of Columbia "does not *currently* recognize a public policy exception to the at-will termination doctrine." *Id.* at 313, 856 F.2d at 267 (emphasis added). In light of *Adams,* Judge Buckley's statement for the court is no longer "current."

issue discussed in dictum has usually not been briefed or argued, and hence has not been "refined by the fires of adversary presentation." *Id.* As Justice Marshall warned for the Court in *Florida Star v. B.J.F.*, 491 U.S. 524, 532, 109 S.Ct. 2603, 2608, 105 L.Ed.2d 443 (1989), "the future may bring scenarios which prudence counsels our not resolving anticipatorily." The question whether there should be a "public policy" exception to the at-will doctrine where an employer dismisses a whistleblower to prevent disclosure of unlawful activity was not presented in *Adams*. In my opinion, it would have been better to leave it alone.[2]

Although we are not bound to following the *Adams* dictum, however, the fact is that the members of the division who decided that case subscribed to the disputed language only a few months ago. Under these circumstances, I agree that if this court is to reach a different conclusion, it would be more seemly to do so en banc.

## II

According to paragraph 12 of the complaint,

> the Bank knew that the only way to stop Plaintiff from continuing to make reports was to terminate him upon the first available pretext. That pretext was found with the missing coin incident. In this regard the Bank was motivated to keep from disclosure evidence of illegal activities occurring within the Bank in order to keep the same information away from Federal regulatory officials, shareholders who were not the employees of the Bank, depositors, and other concerned third parties. Plaintiff was sacri-

ficed in order to maintain this veil of silence.

For the purposes of a motion to dismiss, as the opinion of the court points out, these allegations must be taken as true and construed in the light most favorable to the plaintiff.[3] If there was a conspiracy to protect embezzlers, and if Gray was fired to prevent criminal activity from being discovered, then I question whether the Bank's conduct should be protected by the "at-will" doctrine.

Although I might quibble with the phrasing of the last sentence, I find potential merit in the following statement in Gray's brief:

> Throughout all previous proceedings in this case the Appellee has taken the view of SO WHAT—WE STILL HAD THE RIGHT TO FIRE HIM. If this Court agrees with the Appellee's posture it will be sending a message to not only the Appellant but also to every other diligent and responsible employee in the District of Columbia to keep their [sic] mouths closed any time they perceive possible criminal activity occurring in the workplace; otherwise, they are liable to be summarily fired and they will be unable to look to the Courts of the District of Columbia for aid. It is respectfully suggested that such a result is fundamentally immoral and, therefore, fundamentally bad law.

As the court stated in *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir.1972), it is public policy "in Oklahoma *and everywhere* "[4] to encourage the disclosure of criminal activity. *See also Adler v. American Standard Corp.*, 538 F.Supp. 572, 578–79 (D.Md.1982). Our progressive capital ought not to be left behind. Although changes in firmly rooted

---

**2.** I appreciate the fact that since *Adams* was the first decision in which this court fashioned any exception to the at-will doctrine, the division may have wished to make that exception no broader than necessary. This might have been done, however, without anticipatorily resolving a question not presented.

**3.** To adapt Judge Murnaghan's dissenting opinion in *United States v. Charters*, 863 F.2d 302, 314 (4th Cir.1988) (en banc), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990):

> Judge [Reilly] excels both as a wordsmith and as a thinker. It, therefore, is difficult to enter the lists as his opponent. Yet, here is a case where his words simply fail to convince me.

In my opinion, it is premature to predict what Gray will or will not be able to show before his proof has been received. He is not required to plead his evidence.

**4.** (Emphasis added.) In quoting the underscored words, however, I risk converting my assault on dictum into a two-edged sword.

judicial doctrine are sometimes more appropriately effected by legislatures than by courts, the present case may, in the context of the history discussed in this opinion, provide a suitable vehicle for a judicious new application of the common law.

REILLY, Senior Judge, concurring:

Unlike my concurring colleague, I found no difficulty whatsoever in agreeing with Judge Farrell's opinion holding that the dismissal of appellant-plaintiff's complaint must be affirmed. This disposition was compelled by controlling precedent, including not only *Adams v. George W. Cochran & Co.*, 597 A.2d 28 (D.C.1991), but also by *Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C.1981) (en banc) and the cases cited in *Hall v. Ford*, 272 U.S.App.D.C. 301, 313, 856 F.2d 255, 267 (1988). I would have refrained from expressing my own views had it not been for Judge Schwelb's separate opinion indicating that the issue presented by this particular appeal warrants en banc consideration of the employee at-will doctrine.

It is true that some state appellate courts (but by no means a majority of them) have carved out an exception protecting from discharge employees who have reported illegal activities of fellow workers to higher management, even though they failed to report such activities to law enforcement authorities.

Appellant cites such examples as *Adler v. American Standard Corp.*, 538 F.Supp. 572 (D.Md.1982) (where employee was discharged for threatening to disclose bribery of public officials and falsification of documents); *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980) (quality control director and operations manager fired for advising employer of false labeling of food products in violation of state pure food and drug statute); *Cum-* *mins v. EG & G Sealol, Inc.*, 690 F.Supp. 134 (D.R.I.1988) (dischargee challenged possible illegal price fixing scheme). Should this court ever contemplate the possibility of adopting such a rule of decision, I should like to point out that the instant case is anything but an appropriate one to prompt a departure from well established doctrine.

What we have here is not a· case where the dischargee had discovered any illegal conduct on the part of another employee and reported it to higher management, only to find that exposure of such criminal activity was so unwelcome that he lost his job.[1] All that this dischargee had done, according to his complaint (paragraph 6(b)), was to report on "several occasions" to Vice President Dawes that Henry Sy (the manager of the Southwest branch) "had been arriving at the bank extremely early; had been working very late hours and had failed to take mandated [sic] vacations," all of which plaintiff advised Dawes were indicative of a bank employee who sought to gain the trust of his superiors to enable him to embezzle funds or otherwise commit acts of theft of money or other valuable property at the bank. Dawes dismissed all of plaintiff's reports concerning Sy without follow-up or investigation. Indeed, subsequent to plaintiff's termination and on Dawes recommendation, Sy was appointed manager of the main office.[2]

Although the complaint (para. 10) describes the conduct to which he drew the attention of his direct supervisor and bank officials as "evidence of conduct suggestive of *criminal activity*," thereby causing the bank to know that "plaintiff was a diligent and competent employee who would not remain silent *in the face of evidence that criminal activity* involving possible theft of money from the bank was ongoing"

---

**1.** This is also not a case where an employee had drawn the attention of the bank to a fiduciary who was living extravagantly beyond his means, fraternizing with gamblers and other shady characters, being dunned by creditors or engaging in other suspicious conduct which might have alerted management to some likelihood of embezzlement.

**2.** The complaint also mentions another incident (para. 6(a)). Upon arriving one morning at 7:00, his usual starting time, appellant found his co-manager sitting in the lobby of the main office. She informed him she had not been inside. As appellant then entered the main office, he discovered that the door alarm had been turned off. When he asked Sy, Dawes and three other bank officials whether any of them had previously entered and shut off the alarm, he received negative answers, and was then told by

(emphasis supplied), the notion that he had supplied any information of that sort to his supervisors is belied by his own statement. (See Complaint, para. 6 quoted *supra*.) All that he had observed and reported was that Sy was in the habit of working before and after his scheduled hours and giving up his vacation. Why this should have put the bank on notice of "ongoing criminal activity" is something of a mystery.[3]

Neither Sy nor appellant—"executive" employees and thus exempt from the overtime provisions of the Fair Labor Standards Act—were entitled to extra compensation from the bank when they worked in excess of their regular scheduled hours. Hence, when either volunteered to work overtime or on weekends, he was contributing his services gratis to the bank—an action which would ordinarily win him gratitude from higher management.

In this context, it would seem that Sy's behavior evinced nothing more sinister than a flair for office politics and that Vice President Dawes, perhaps annoyed at what appeared to be appellant's persistence in voicing unfounded suspicions of a fellow executive, deemed appellant's belated discovery of a series of coin thefts from the vault by an employee for whose supervision he was charged, as revealing neglect of his own duties, and meddlesome on matters outside his province. In other words, appellant's discharge for the reasons given him was understandable. Significantly, the complaint does not allege that Dawes or any other superior colluded with Sy in the embezzlement for which he was indicted several months after appellant had left the bank.

Where Judge Schwelb and I differ in our analysis of the case is that he accepts as true the allegations (Complaint para. 12),

that "the bank knew that the only way to stop plaintiff from continuing to make reports was to terminate him on the first available pretext" and that the bank's motive was to keep evidence of illegal activities within the bank from disclosure, and thus prevent regulatory officials, shareholders, and depositors from learning of them.

Granted that in the posture of a motion to dismiss the allegations of fact in a complaint must be taken as true. But this does not mean that we must accept legal opinions and conclusions as true. *Mirin v. Justices of Supreme Court of Nevada*, 415 F.Supp. 1178, 1190 (D.Nev.1976) (where plaintiff's allegation of conspiracy was held not to sustain complaint in face of motion to dismiss because recital of facts in complaint did not justify such conclusion). Here it is plain that the allegations quoted in the Schwelb opinion rest on conjecture and speculation. Had the motions court ruled differently and let the case go to trial, appellant would have been allowed to take the stand to prove his factual allegations, *viz.*, his nine-year tenure of employment, his prior exemplary efficiency ratings, the explanation given for terminating him, the contrasting lenient conduct of the bank on two other occasions in dealing with supervisors whose subordinates had stolen money, and what he had said to Dawes about Sy's working habits. I also accept this narrative of events as true. Obviously, however, he would not have been allowed to testify that his firing was a pretext or to give his opinion as to the motivation for his discharge.

The distinction between allegations that are well pleaded and those that are not is illustrated in a case somewhat similar to

---

Dawes and a security officer that as nothing was missing, he need not worry.

Except as an example of appellant's diligence in reporting "irregularities which could give rise to a theft of money," this allegation on its face is meaningless. He does not allege that any of his superiors were annoyed by his questions or that among the six persons who might have closed the alarm mechanism, Sy was the most logical suspect.

3. In order to show that his suspicions were not completely groundless, the complaint avers that six months after appellant's termination, Sy was

indicted for embezzlement and pleaded guilty. Although the indictment and the admissions of fact required by the court in accepting the guilty plea are matters of public record, the complaint does not disclose time or circumstances which might have linked the commission of the crime to some of the events reported as indicative of a conspiracy by management to protect embezzlers. It is difficult to believe that if any counts in the indictment or bill of particulars had involved Dawes as a participant, appellant would have failed to mention this in his complaint.

the instant one—an appeal from an order sustaining a demurrer to a complaint alleging retaliatory discharge of an employee reporting defects in a particular product, *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). In a majority opinion affirming, Justice Pomeroy of the Pennsylvania Supreme Court observed:

> We see no basis for inferring that Geary's discharge was a spiteful retaliatory gesture designed to punish him for noticing and calling attention to the asserted defect in the company's product. This is particularly true in view of the fact that the product was withdrawn from the market. It does not follow that, because Geary's motives were good, the company's motives in discharging him were bad. In scrutinizing the complaint we are not required to put aside our common sense or attribute to parties a perversity which the facts alleged do not warrant.

*Id.* 319 A.2d at 180 n. 15.

In my view this observation is *a fortiori*, the proper guideline for the disposition of this appeal. The case before us is anything but a "suitable vehicle" for en banc consideration.

### ORDER

PER CURIAM

On consideration of appellant's petition for rehearing en banc, the opposition and the reply thereto, and the motion of Metropolitan Washington Employment Lawyers Association for leave to file brief as amicus curiae in support of the petition, the lodged brief, the opposition and the reply thereto, it is

ORDERED that the motion for leave to file brief is granted and the Clerk is directed to file the lodged brief of amicus curiae; and it appearing that the majority of the judges of this court has voted to grant the petition for rehearing en banc, it is

FURTHER ORDERED that the appellant's petition for rehearing en banc is granted and that the opinion and judgment of February 4, 1992, are hereby vacated. It is

FURTHER ORDERED that the Clerk shall schedule this matter for argument before the court sitting en banc on Thursday, May 7, 1992, at 9:30 a.m. Counsel are hereby directed to provide ten copies of the briefs heretofore filed to the Clerk on or before April 24, 1992.

