**James LIBERATORE, Appellant,**

v.

**MELVILLE CORPORATION,
t/a CVS, Appellee.**

No. 96–7067.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 13, 1998.

Decided March 16, 1999.

Damon K. Bernstein argued the cause and filed the briefs for appellant.

John M. Nolan argued the cause for appellee, with whom Carlton J. Trosclair was on the brief.

Before: HENDERSON, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

James Liberatore appeals from the grant of summary judgment to his former employer, the Melville Corporation ("Melville") on his claim for wrongful discharge. Although hired as an at-will employee, he contends that his discharge was in retaliation for his threat to report to the Federal Drug Administration ("FDA") the unlawful condition in which his employer was storing pharmaceutical drugs, and that his claim of wrongful discharge therefore falls within the public policy exception to the at-will employment doctrine under District of Columbia law. While his appeal was pending, the District of Columbia Court of Appeals decided *Carl v. Children's Hospital*, 702 A.2d 159 (D.C.1997) (en banc), in which the court held that the public policy exception was not limited to cases where an at-will employee was discharged for having outright refused to violate a law.[1]  *Id.* at 160.  Thereafter, in *Washing-*

---

1.  After Liberatore filed his appeal of the October 2, 1995 order granting summary judgment to the Melville Corporation, he filed a motion to stay the appeal on October 18, 1996 pending the District of Columbia Court of Appeals' en banc

*ton v. Guest Services,* 718 A.2d 1071 (D.C. 1998), that court held *Carl* was retroactive.[2] Accordingly, we hold that Liberatore has stated a cause of action for wrongful discharge under *Carl's* expanded public policy exception to the at-will employment doctrine, and we reverse.

## I.

James Liberatore was employed from 1980 to 1993 as a pharmacist for People's Drug Store, and subsequently for CVS when CVS's parent company, the Melville Corporation, purchased People's in 1990. It is undisputed that he was an at-will employee.[3] At the time of his discharge, Liberatore was the manager of the pharmacy department at the Thomas Circle drug store in the District of Columbia. In late January 1993, the pharmacy was relocated to a glass enclosed area that protruded beyond the building's exterior wall. Liberatore and other employees began to notice that inadequate temperature control in the pharmacy was adversely affecting the condition of certain drugs. Liberatore initially brought the matter to the attention of his immediate supervisor, Nita Sood, and later to her supervisor, Jon Roberts. Liberatore continued to report his concerns to upper-level management as the temperature in the pharmacy rose, causing visible adulteration of a number of drugs. Although management informed Liberatore that it was working on the problem, the problem persisted during the spring and early summer.

On July 29, 1993, Liberatore told the Area Vice President, Larry Merlo, that although he "didn't want to have to do this," he had a neighbor who was the "number three guy in the FDA," and he wondered what the FDA "would think about a seven month delay in a drugstore that can't control the temperatures of the pharmacy." That evening, management authorized the removal of drugs worth $250,000 from the pharmacy for reclamation.[4] On August 2, 1993, Liberatore's immediate supervisor notified the loss prevention department that certain other drugs were missing from inventory. After the department questioned pharmacy staff about the shortage, Liberatore was identified as a suspect, and management turned over the investigation to the Metropolitan Police Department. On August 6, Liberatore was questioned by the police. On the same date, Liberatore was discharged; the stated reason was not the drug loss investigation, but the lapse of Liberatore's pharmacy license, which management claimed not to have discovered until that date.

Liberatore sued Melville for wrongful discharge and defamation.[5] He alleged that he was fired because he threatened to report the temperature control problem in the pharmacy to the FDA, and that his lapsed license was a pretext because other pharmacists were not fired for failing to renew their licenses and his supervisor had known of his lapsed license for months. The district court dismissed Liberatore's wrongful discharge claim for failure to state a cause of action within the narrow public policy exception to at-will employment set forth by the District of Columbia Court of Appeals in *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 34 (D.C.1991). Although Liberatore had complained to various supervisors and threatened to report the temperature control problem to the FDA, the district court concluded that because he continued to dispense drugs voluntarily, unlike the plaintiff in *Adams,* he did not present his employer with an outright

decision in *Carl.* The motion to stay was granted on November 8, 1996.

**2.** Following oral argument, this court held Liberatore's appeal in abeyance pending a decision by the D.C. Court of Appeals on whether *Carl* was retroactive. Order of April 16, 1998. That issue was decided in *Washington,* which became final on December 17, 1998, when the D.C. Court of Appeals denied a petition for rehearing en banc.

**3.** Under District of Columbia law, "employment is presumed to be at will, unless the contract of

employment expressly provides otherwise." *Carl,* 702 A.2d at 162.

**4.** Reclamation is the process by which drugs unfit for sale are reclaimed, removed from the store's inventory, and eventually destroyed.

**5.** Liberatore does not appeal the award of no damages on his defamation claim arising from a CVS security guard's statement that Liberatore had been using or taking drugs.

refusal to violate a specific statute or regulation.

## II.

An employee who serves at the will of his or her employer may be discharged "at any time and for any reason, or for no reason at all." *Adams*, 597 A.2d at 30; *see Pfeffer v. Ernst*, 82 A.2d 763, 764 (D.C.1951). This proposition "has long been settled in the District of Columbia," *Adams*, 597 A.2d at 30, and it is only in recent years that the District of Columbia Court of Appeals has identified a public policy exception to the at-will employment doctrine. In *Adams*, the D.C. Court of Appeals held that an at-will employee stated a cause of action for wrongful discharge where the employee would have been forced to violate the law in order to avoid termination. The employer in *Adams* had allegedly fired a delivery truck driver after he had refused to drive a truck that did not have an inspection sticker on its windshield because it was illegal to operate a motor vehicle in the District of Columbia without one. *Id.* at 29–30 & n. 1. The D.C. Court of Appeals concluded that because the employer's instructions would have forced Adams to violate the law, strong public policy considerations weighed in favor of a narrow exception to the at-will employment doctrine. The court explained:

> Appellant Adams was forced to choose between violating the regulation and keeping his job—the very choice which, ... he should not have been required to make. Even though the criminal liability facing him was not very great, it was nonetheless unacceptable and unlawful for his employer to compel him to choose between breaking the law and keeping his job. We therefore hold, ... that there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation.

*Id.* at 34.

After *Adams*, the D.C. Court of Appeals resisted further expansion of the public policy exception to the at-will employment doctrine. *See, e.g, Gray v. Citizens Bank of Washington*, 602 A.2d 1096 (D.C.1992), *reh'g en banc granted and opinion vacated, id.* at 1102, *opinion reinstated on denial of reh'g en banc*, 609 A.2d 1143 (D.C.1992). In *Gray*, a bank employee alleged that he was fired after reporting to his superior evidence of illegal activities by other employees. *Id.* at 1096. The court held that Gray did not fall within *Adams'* narrow public policy exception to the at-will employment doctrine, and declined to expand the scope of possible exceptions. A cause of action for wrongful discharge would lie only where the employee refuses to violate a specific law and the employer puts to the employee the choice of breaking the law or losing his job. Although the court initially granted rehearing en banc, it ultimately declined reconsideration. Similarly, in *Thigpen v. Greenpeace, Inc.*, 657 A.2d 770, 771 (D.C.1995), the D.C. Court of Appeals declined to expand *Adams'* narrow exception where an employee, somewhat like Liberatore, communicated with his superiors and filed a complaint with the District authorities about his employers' alleged violation of the minimum wage law, but "continued to work as before and did not refuse to carry out any instructions from his employer." This was the state of the District of Columbia law when the district court granted summary judgment in the instant case.

During the pendency of Liberatore's appeal, however, the D.C. Court of Appeals decided in *Carl*, 702 A.2d 159, that an expansion of the public policy exception was warranted even in the absence of a refusal by an employee to violate the law. In *Carl*, the at-will employee, a nurse, alleged *inter alia*, that she was wrongfully discharged in retaliation for testifying before the Council of the District of Columbia on proposed tort reform legislation, taking a position that advocated patients' rights adverse to the interests of her employer. *Id.* at 160. Her employer claimed she was fired for failing to meet orientation requirements for probationary employees. *See id.* D.C.Code § 1–224 makes it unlawful to intimidate or impede a witness in any proceeding before the D.C. Council. Because the employee alleged she

was discharged in retaliation for her testimony before the D.C. Council, the court held that the public policy embodied in § 1–224 warranted expansion of the exception to the at-will employment doctrine. At the time Liberatore's appeal was argued in this court, it was unclear, however, whether as a matter of District of Columbia law, *Carl* was retroactive. That question was decided by the D.C. Court of Appeals in *Washington*, 718 A.2d 1071.

In *Washington*, a cafeteria employee alleged that she was discharged in retaliation for following the District of Columbia health laws. After Washington, a cook in a retirement home, told a fellow worker to stop spraying poisonous cleaning fluid next to uncovered food, she alleged that the manager told her he had ordered the employee to clean the area, and for her to tell the employee otherwise constituted insubordination. *See id.* at 1072. Because the conduct at issue had occurred prior to *Carl*, the court had to decide whether *Carl* would be retroactive. In concluding that it would, the court applied *Mendes v. Johnson*, 389 A.2d 781 (D.C.1978) (en banc), pretermitting a determination of whether *Mendes* was implicitly overruled by the Supreme Court in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), and *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Under *Mendes*, the court considers four factors in determining whether to apply a new civil rule retroactively: the extent of the parties' reliance on the old precedent, the avoidance of altering vested contract or property rights, the desire to reward plaintiffs seeking to initiate just changes in the law, and the fear of burdening the administration of justice by disturbing decisions reached under the overruled precedent. 389 A.2d at 789.

In *Washington*, the court concluded that the employer's stated reason for firing Wash-

ington belied any notion of actual reliance on the narrow public policy exception announced in *Adams*, and that in general, neither employers nor the public could reasonably have relied on the *Adams* standard because the court had never explicitly held that there was only one narrow public policy exception. 718 A.2d at 1076–77. The court took note of the expanded public policy exception in other jurisdictions[6] and supervening Supreme Court decisions on the retroactivity of new civil rules in *Beam Distilling*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481, and *Harper*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74, and concluded that it gave employers fair warning of the retroactive application of any expansion of the public policy exception. *Washington*, 718 A.2d at 1078. The employer cited no authority for a vested right to discharge an at-will employee, and the court was unpersuaded that an employer's expectation that the public policy exception would remain limited, as announced in *Adams*, created such a right. *See id.* Noting that Washington had not brought her lawsuit to effect a change in the law, the third *Mendes* factor did not weigh in her favor. On the other hand, the court rejected the notion that applying *Carl* retroactively would result in a plethora of wrongful discharge lawsuits. *Id.* at 1079.

Melville's contentions that *Carl* should not apply to Liberatore's case are unpersuasive. As in *Washington*, the employer's stated reason for firing was Liberatore's lapsed license, thereby belying actual reliance on the narrower public policy exception announced in *Adams*. 718 A.2d at 1076. The D.C. Court of Appeals in *Washington* rejected the argument that *Carl* broke completely new ground and was not foreshadowed by any prior holdings. *Id.* at 1077–78. Any reliance on the old at-will employment doctrine fails the reasonable reliance test, the D.C. Court of Appeals concluded, in light of *Adams*, the law in other jurisdictions, and the supervening Su-

---

**6.** *See id.* at 1079 (citing *Bernstein v. Aetna Life & Cas.*, 843 F.2d 359, 363–64 (9th Cir.1988) (applying Arizona law); *Newman v. Emerson Radio Corp.*, 48 Cal.3d 973, 258 Cal.Rptr. 592, 772 P.2d 1059, 1062–72 (Ca.1989); *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 110–14 (Colo.1992); *McGehee v. Florafax Int'l* , 776 P.2d 852, 853–54

(Okla.1989)); *id.* at 1077 (citing 82 Am.Jur.2d on Wrongful Discharge § 15, at 688 (1992), noting that courts generally protect three categories of protected employee conduct: (1) exercising a statutory right or civil obligation, (2) refusing to engage in illegal activity, and (3) reporting criminal conduct to supervisors or outside agencies).

preme Court decisions on retroactivity. *Id.* To no more avail is a contention based on the burden on the administration of justice, for as the *Washington* court noted, there is nothing of record to suggest that a substantial number of pending appeals would be subject to being reopened. *Id.* at 1078–79.

Consequently, we conclude that the grant of summary judgment for failure to state a cause of action within the public policy exception must be reversed. Although there was no agreement by the D.C. Court of Appeals in *Carl* about the nature of the conduct that would qualify under its expanded public policy exception, the separate views of the judges indicate that "the effective holding of the en banc court," 702 A.2d at 197 n. 2 (Steadman, J. dissenting), is that circumstances other than an employee's outright refusal to violate a law constitute grounds for a public policy exception if "solidly based on a statute or regulation that reflects the particular public policy to be applied." *Id.* at 163; *see also id.* at 164 n. 6 (Terry, J).

■ In his brief, Liberatore cites both federal and District of Columbia law proscribing the improper storage of drugs. The FDA regulations require the storage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drugs products are not affected. 21 C.F.R. § 211.142(b). Failure to comply results in adulterated drugs as defined by Section 501 of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 351, *see* 21 C.F.R. § 210.1(b), and the violator is subject to a fine, imprisonment up to one year, or both. 21 U.S.C.A. § 333(a)(1). Under D.C.Code § 2–2013(a) (1981), "[d]rugs which may deteriorate shall at all times be stored under conditions specified on the label of the original container and in accordance with applicable District of Columbia or federal laws or regulations."

The conduct that Liberatore claims resulted in his termination implicates the public policy underlying the legal proscriptions on the storage and handling of drugs. On numerous occasions, Liberatore notified management of the temperature control problems in the pharmacy, and when the problems continued, he threatened to alert the FDA. His claim that he was discharged for his threat to report conditions to the FDA that were in violation of federal and District of Columbia laws protecting the public from the purchase of adulterated drugs implicates the kind of public policy embodied in a statute or regulation underlying the D.C. Court of Appeals' decision in *Carl* to expand *Adams'* narrow exception to the at-will employment doctrine. *See* 702 A.2d at 164–65; *Washington,* 718 A.2d at 1080.

Contrary to Melville's contentions, neither *Adams* nor its progeny indicates that the D.C. Court of Appeals would draw a distinction between a threat and an actual complaint to the appropriate enforcement official. In *Washington,* the employee did not threaten to notify health authorities but simply informed management of the alleged law violations. *See* 718 A.2d at 1072; *cf. Adler v. American Standard Corp.,* 538 F.Supp. 572, 577–80 (D.Md.1982); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385, 388 (1980); *McQuary v. Bel Air Convalescent Home, Inc.,* 69 Or.App. 107, 684 P.2d 21, 22–23, 24 (1984). In other cases cited by Melville, the employee simply disagreed with management decisions and did not allege a violation of law or action contrary to public policy.[7] Were the court to agree that discharges from employment in retaliation for internal complaints of law violations are not protected by the public policy exception, it would "create perverse incentives by inviting concerned employees to bypass internal channels altogether and immediately summon the police." *Belline v. K–Mart Corp.,* 940 F.2d 184, 187 (7th Cir.1991).

Nor is there authority to support the proposition that Liberatore has failed to state a cause of action because he violated the same

---

7. *See Suchodolski v. Michigan Consol. Gas Co.,* 412 Mich. 692, 316 N.W.2d 710, 711–12 (1982); *Pierce v. Ortho Pharm. Corp.,* 84 N.J. 58, 417 A.2d 505, 513–14 (1980); *DeVries v. McNeil Consumer Prod. Co.,* 250 N.J.Super. 159, 593 A.2d 819, 825–27 (1991); *House v. Carter–Wallace, Inc.,*

232 N.J.Super. 42, 556 A.2d 353, 356 (1989); *Jones v. Gilstrap,* 288 S.C. 525, 343 S.E.2d 646, 646–49 (S.C.App.1986); *cf. Mello v. Stop & Shop Cos.,* 402 Mass. 555, 524 N.E.2d 105, 106–08 (1988).

drug safety standards that are the basis of his alleged wrongful discharge. Liberatore's violation does not excuse the employer's like failure, itself an independent violation of the public policy underlying the legal proscriptions, much less permit retaliatory discharges. The contention that Liberatore was properly discharged for jeopardizing the employer's interests is a question of disputed fact, and hence, summary judgment on that basis would be inappropriate. Melville's reliance on *Korb v. Raytheon Corp.*, 410 Mass. 581, 574 N.E.2d 370 (1991), involving a lobbyist who spoke to the press against his employer's interest in greater defense spending, is misplaced because Liberatore's duties as a manager of the pharmacy department were neither incompatible with the employer's interests nor such as to preclude him from complaining about temperature control problems in the pharmacy.

■ Accordingly, because the complaint states a cause of action for wrongful discharge under the expanded public policy exception to the at-will employment doctrine recognized by the D.C. Court of Appeals in *Carl*, and there remains a genuine issue of material fact as to the employer's stated reason for Liberatore's discharge, we reverse the grant of summary judgment.