Paul NEWMAN, et al., Plaintiffs,

v.

LEGAL SERVICES CORPORATION, et al., Defendants.

Civ. A. No. 84–3345.

United States District Court, District of Columbia.

Jan. 27, 1986.

Lisa B. Rovin, Marc Efron, Rochelle M. Gunner, Ridgway M. Hall, Jr., Crowell & Moring, Washington, D.C., for plaintiffs.

Jacob A. Stein, Robert F. Muse, Stein, Mitchell & Mezines, Washington, D.C., for defendant Potack.

D. Clifford Crook, III, Asst. Gen. Counsel, and Robert T. Thompson, John P. Mann, Harold P. Coxson, Dannie B. Fogleman, Thompson, Mann & Hutson, Washington, D.C., for defendant Legal Services.

Griffin B. Bell, James Miller, King & Spaulding, Washington, D.C., for defendant Bogard.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on defendants' motions for summary judgment.

### I. *Background*

Plaintiff Newman was the regional director of Legal Services Corporation's (hereinafter "LSC") Denver regional office and Plaintiff Gilbert was regional director of LSC's Boston regional office. On August 10, 1984, Defendant Potack, LSC's President fired both plaintiffs.

Defendants in the case are the Legal Services Corporation; and Donald P. Bogard, LSC's President and Gene Potack LSC's Director of Office of Field Services at the time plaintiffs were fired. The Legal Service Corporation Act provides that neither the LSC nor its employees (with certain exceptions not relevant in this case) are to be deemed part of the federal government. 42 U.S.C. § 2996d(e)(1). However, all of LSC's funding is from the federal government, it publishes its regulations in the Code of Federal Regulations, and it is subject to FOIA.

Plaintiffs have alleged four types of claims against defendants. First, plaintiffs contend that they were wrongfully terminated in violation of their employment contract and in violation of public policy. Second, plaintiffs claim that their terminations violate the First and Fifth Amendments of the United States Constitution. Third, plaintiffs claim that defendants defamed them in their testimony to a Congressional committee and by sending a copy of that testimony to someone under FOIA, in statements allegedly made to LSC employees and directors, and in a letter to the Massachusetts Bar Association. Finally, plaintiffs complain of intentional infliction of emotional distress based on defendants allegedly outrageous conduct of preventing plaintiffs from communicating with co-workers and from keeping plaintiffs from immediately removing their personal belongings from their offices.

Defendants contend, first, that plaintiffs had no employment contracts and thus were at-will employees who could be dismissed for any reason at any time. Second, defendants argue that they are not federal or state actors and, therefore, cannot be sued for alleged constitutional violations. Third, defendants state that their communications to Congress are absolutely privileged from suit and that communications within LSC are qualifiedly immune. Finally, defendants argue that they did not act outrageously, and as a matter of law,

cannot be liable to plaintiffs for intentional infliction of emotional distress. Defendants have moved for summary judgment on all plaintiffs' claims.

## II. *Discussion*

At the outset, it must be noted that there is a potential conflict of laws issue in this case. LSC is a District of Columbia corporation and, at the time of their firings, plaintiff Newman was a Massachusetts resident and plaintiff Gilbert was a Colorado resident. However, the case law of the three jurisdictions on the non-federal issues involved in the motions for summary judgment is not in conflict, and the parties do not raise choice of law as an issue for purposes of this motion. Thus, the court will apply District of Columbia law to the nonfederal issues involved in this case.

### A. *Wrongful Termination Claims*

■ The individual defendants, Potack and Bogard, argue that they cannot be held personally liable to plaintiffs for violation of their employment contracts. Rather, Potack and Bogard argue that only LSC can be liable since LSC was plaintiffs' employer, not them. Since plaintiffs do not allege that they had an employment contract with either individual defendant, summary judgment is granted to individual defendants on plaintiffs' violation of employment contract claim.

The next set of questions the court must address is whether plaintiffs were at-will employees, and if so, whether there is a public policy exception to the at-will employment doctrine in this jurisdiction.

Plaintiffs contend that they had an employment contract with defendant LSC. While plaintiffs admit that there is no single document regarding their employment entitled "employment contract", they argue that LSC's written offer (Plaintiffs Appendix, Tab 1), each plaintiff's written acceptance (*Id.* at Tab 2), and the LSC Personnel Procedures Manual (*Id.* at Tab 3) constitute an employment contract.

■ That argument is not well taken. As this court has stated, an employment contract is terminable at will unless it is for a specified term. *Prouty v. Nat'l Passenger R.R. Corp.*, 572 F.Supp. 200, 204 (D.D.C.1983) (June Green, J.). None of the documents plaintiffs rely on contain a specified term of employment. Moreover, the LSC Act specifically provides that the President of LSC may terminate employees at will. 42 U.S.C. 2996d(b)(1) (1982). Thus, this court holds that plaintiffs were at-will employees.

Having decided that plaintiffs were at-will employees, the court must now consider whether this jurisdiction would recognize a public policy exception to the at-will employment doctrine.

In *Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C.Ct.App.1981), the court denied a petition for rehearing *en banc* a panel decision which held that there was no public policy exception in the District. However, there was no majority opinion, and four judges dissented from the decision not to grant rehearing *en banc*. A dissent in which three of the dissenting justices fully joined, indicates with convincing force that the District would recognize a public policy exception to the at-will employment doctrine.

The general rule in the District of Columbia is that an at-will employee may be terminated for any reason—right or wrong—or for no reason at all. *See Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211 (D.C.Mun.App.1961). And that rule had been the rule in most, if not all, American jurisdictions.

On the federal level, the at-will employment rule was modified by the enactment of labor relations legislation, *see NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Similarly, many states have recognized the need to control an employer's right to discharge employees who are not parties to a collective bargaining agreement. Those states have recognized a so-called "public policy" exception to the at-will employment doctrine.

The landmark state case was *Petermann v. Int'l Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959). In *Petermann*, an at-will employee was fired for refusing to commit perjury at a legislative hearing. The court held that the employer's conduct violated the state's *declared* public policy of encouraging truthful testimony. In the wake of *Petermann*, many states have adopted a "public policy" exception. Only two states, Florida and Alabama, have refused to recognize the exception. *See Martin v. Tapley*, 360 So.2d 708 (Ala.1978); *Segal v. Arrow Industrial Corp.*, 364 So.2d 89 (Fl.Ct.App. 1978).

■ Granted, terminated employees should not be allowed to haul their employers into court and require them to assert a good reason for the employee's termination. An employer has the right to hire and fire who he will. Thus, courts, in cases like *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), have balanced the employee's interest in maintaining employment, the employer's interest in running a business, and the public interest. Other courts have held that they will recognize the exception only where a *clear mandate* of public policy is involved. *See, e.g., Percival v. General Motors Co.*, 400 F.Supp. 1322 (E.D.Mo.1975), *aff'd* 539 F.2d 1126 (8th Cir.1976). Perhaps the most lucid statement and analysis of the clear mandate test came in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (N.J.1980). There the court stated:

We hold that an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions.... Absent legislation, the judiciary must define the cause of action in case-by-case determinations. An employer's right to discharge an employee at will carries a correlative duty not to discharge an employee who declines to perform an act that would require a violation of a clear mandate of public policy. However, unless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause.

*Id.*, 417 A.2d at 512.

■ This court holds that the District of Columbia would recognize a public policy exception to the at-will employment doctrine consistent with the Supreme Court of New Jersey's decision in *Pierce*. The District has long recognized a public policy exception to a landlord's right to evict a tenant-at-will. *Edwards v. Habib*, 397 F.2d 687 (D.C.Cir.1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). The right to employment is as fundamental a right as the right to housing. Thus, this court holds that the District of Columbia would recognize a public policy exception to the at-will employment doctrine.

Having concluded that such an exception would be recognized for violations of clear mandates of public policy, the court next examines whether such a clear mandate of public policy exists as a matter of law in this case.

Plaintiffs argue that their terminations violated public policy in three ways. First, plaintiffs state that they were terminated "because defendants perceived them to be ideologically opposed to defendants' notions of delivery of legal services to the poor." (Plaintiffs' Rule 1–9(i) Statement at 7). Second, plaintiffs contend that they were terminated "for exercising constitutional rights to freedom of speech and association and to petition the government. (*Id.*). Finally, plaintiffs claim that they were terminated for informing defendants of violations of the LSC Act. (*Id.* at 8). This memorandum will now address each of those claims.

■ The court holds that there is no clear mandate of public policy which prevents an employer from terminating an employee who disagrees with the organizational or managerial ideology of his or her employer. For one, plaintiffs have not pointed to a source which states such a policy. The only possible source is a provi-

sion of the LSC Act which requires that there be no political test or qualification for employment with LSC. 42 U.S.C. § 2996e(b)(2) (1982). However, that provision speaks in terms of political party differences between an LSC employee and the LSC. It says nothing about ideological differences concerning how the corporation should conduct its business. Moreover, an employer has a strong interest in assuring that employees follow the employer's policies and managerial ideology. And so the courts recognizing the public policy exception have held. *See, e.g., Percival v. General Motors Corp.,* 400 F.Supp. 1322 (E.D. Mo.1975), *aff'd* 539 F.2d 1126 (8th Cir. 1976); *Trombetta v. Detroit, Toledo & Ironton R. Co.,* 81 Mich.App. 489, 265 N.W.2d 384 (Ct.App.1978); *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1979). As stated by the New Jersey Supreme Court in *Pierce:* "In evaluating claims for wrongful discharge, courts have been careful not to interfere with the employer's right to make business decisions and to choose the best personnel for the job." 417 A.2d 510–511.

■ Similarly, the court holds that plaintiff's second identified violation of public policy is not actionable. Plaintiffs claim that they were terminated for exercising their First Amendment rights. There is one overriding problem with plaintiffs' identification of the First Amendment as a clear mandate of public policy in this case: By its own terms, the First Amendment applies only to federal or state governmental actors. If LSC is held not to be a state actor (*see* discussion *infra*), the First Amendment could not serve as a clear source of public policy constraining LSC. If, on the other hand, LSC is held to be a state actor, plaintiffs' remedy for violations of the First Amendment lie in an action for constitutional violation, *not* for wrongful termination. *See Mt. Healthy v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Since plaintiffs make such a claim, it will be discussed below.

Finally, the court rejects plaintiffs' third claimed mandate of public policy. Plain-

tiffs claim that they were fired for informing their superiors of violations of the LSC Act. Plaintiff Newman specifically claims that he was fired for informing defendants that they were not properly monitoring LSC grant recipients. (Plaintiffs' Memo in Opposition at 16–17). Plaintiff Newman points to alleged unreasonable travel restrictions and understaffing as evidence of LSC's failure to monitor. Plaintiff Gilbert specifically claims he was terminated for sending two staff members to investigate an alleged violation of the LSC Act in Laredo, Texas.

■ While plaintiffs cite specific sections of the LSC Act which provide that LSC must monitor grant recipients and investigate alleged violations, those sections are not *clear mandates* of public policy. Those sections only mandate that LSC monitor and investigate; those sections do *not* mandate *how* LSC should carry out its monitoring and investigatory functions. Plaintiffs' complaints focus around their disagreement with LSC over how to monitor recipients and how to investigate violations. In essence, the controversy involved a difference of professional opinions. Courts recognizing the public policy exception to the at-will employment doctrine have consistently held that such disagreements are not actionable violations of public policy. *See, e.g., Pierce,* 417 A.2d at 513–514; *Lampe,* 590 P.2d at 515–517.

For those reasons, the court grants defendants' motion for summary judgment on plaintiffs' claims alleging that they were terminated in violation of public policy.

■ The final part of plaintiffs' wrongful termination claims is against the individual defendants. Plaintiffs allege that Potack and Bogard intentionally interfered with plaintiffs' employment contract with LSC. The individual defendants have moved for summary judgment on that claim arguing that they cannot be held liable for intentional interference because that cause of action requires the intervention of a third party.

■ Defendants' argument accurately states the law in this jurisdiction. In *Donohoe v. Watt*, 546 F.Supp. 753 (D.D.C. 1982), *aff'd without opinion*, 713 F.2d 864 (D.C.Cir.1983), a discharged employee sued the president of his former employer and alleged that the president tortiously interfered with plaintiff's employment. The court (Jackson, J.) granted summary judgment to the president, stating, "[i]t is a well settled principle of law that this tort arises only when there is interference with a contract between the plaintiff *and a third party*." 546 F.Supp. at 757. A corporate officer is not a third-party to a contract between his corporation and one of its employees. Thus, summary judgment is granted to individual defendants on plaintiffs' claim of intentional interference.

## B. *Constitional Law Claims*

Defendants are only liable for constitutional violations if they are federal or state actors. Thus, the court must determine whether any, all or none of the defendants are federal or state actors before it can address plaintiffs' constitutional law claims.

LSC is a corporation which was established by the federal government and which receives all its funding from the federal government. LSC has the power to promulgate regulations which must be published in the Federal Register, LSC is subject to the Freedom of Information Act, *see* 42 U.S.C. § 2996d(g), and LSC is prohibited from terminating recipients of its funds without providing notice and an opportunity for a hearing before a hearing examiner, *see* 42 U.S.C. § 2996j. However, Congress has specifically provided that LSC's officers and employees shall not be considered officers and employees of the Federal Government. 42 U.S.C. § 2996d(e)(1).

While there are several cases cited by defendants which hold that local legal service organizations funded by LSC are not federal actors, *see, e.g.*, *Gerena v. Puerto Rico Legal Services, Inc.*, 538 F.Supp. 754 (D.P.R.1982), *aff'd*, 697 F.2d 447 (1st Cir. 1983), only one has specifically addressed whether LSC itself is a federal actor. In *Eligible Residents of Garfield-Austin v. Legal Assistance Foundation*, Civ. No. 82-C-1007 (N.D.Ill. May 24, 1982, unpublished, *see* Plaintiffs' Appendix at Tab 14), the court held that LSC was a federal actor. That case, unfortunately, was decided one-month prior to three recent Supreme Court decisions which set forth the tests for finding state or federal action. Therefore, this court rejects the holding in the *Eligible Residents* decision and, instead, applies the tests and standards set forth in the recent Supreme Court decisions.

On June 25, 1982, the Supreme Court decided three cases involving the state action requirement: *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); and *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). In *Lugar* the Court set forth a two-part test to be used in deciding whether an entity is a federal or state actor. First, the alleged constitutional deprivation must be caused by the exercise of some right or privilege created by the governmental actor or by a rule of conduct imposed by the government. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. 457 U.S. at 937, 102 S.Ct. at 2753–2754.

*Rendell-Baker*, the second of the Supreme Court's June 25, 1982, trilogy of state action cases, is the decision that dealt with facts most identical to the facts of the case at hand. In *Rendell-Baker*, the named petitioner sued her former employer, the New Perspectives School, and New Perspectives' director, Sandra Kohn. Plaintiff claimed she had been terminated for exercising her First Amendment rights by supporting a student petition. The School, although privately owned, received almost all of its funding from the state, and petitioner Rendell-Baker's position was funded by a grant from the federal Law Enforcement Assistance Administration distributed from a state committee. As a

condition of the grant, the committee had the right to àpprove or disapprove of the school's initial hiring decisions. Because of these factors, petitioners claimed that the school and its director were state actors.

In its decision, the Supreme Court concluded that neither the school nor its director were state actors. The court held that neither the fact that virtually all the school's income was from governmental sources nor the fact that the initial hiring decision was subject to state regulation, nor that the school was carrying out a "public function", justified a holding finding state action.

In reaching that conclusion, the court cited a particularly relevant case to the facts of the present case, *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). In *Polk County*, the Court held that a public defender, although an employee of the state, was not a state actor because "a public defender is not amenable to administrative direction in the same sense as other employees of the State" and because of the state's obligation "to respect the professional independence of the public defenders whom it engages." 454 U.S. at 321, 102 S.Ct. at 451.

Application of these legal principles to the undisputed facts of this case, compels a holding that neither LSC nor the individual defendants here are governmental actors. As in *Rendell-Baker*, there is no indication or allegation that the decisions to fire plaintiffs were compelled or even influenced by federal governmental regulation.[1] As mentioned above, the president of LSC has the power to terminate employees, a power which is not subject to any federal governmental regulation. *See* 2996d(b)(1). Furthermore, the legislative history of the LSC Act indicates that LSC was formed for the very reason that it should have independence from federal government regulation.

*See* H.R.Rep. No. 247, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.Code Cong. & Adm.News 3872, 3873. For those reasons, the court holds that defendants are not federal actors and should grant defendants' motions for summary judgment on plaintiff's constitutional law claims.

### C. *Defamation Claims*

Plaintiffs first claim that defendants defamed them in a submission to a subcommittee of the House Judiciary Committee. By letter dated September 14, 1984, Rep. Kastenmeier requested the following material "in preparation for the hearing":

> A copy of any written materials relating to the terminations of Messrs. Newman and Gilbert, including but not limited to: (a) memoranda, if any, of Potack or any other corporation employee or officer to the personnel officer prior to or subsequent to the terminations; (b) any personnel action form or termination form related to the termination; (c) a detailed explanation of the specific facts, activites or events which form the basis of the terminations [footnote omitted]; and (d) any other information relevant to the reason for the terminations.

Pl.Ex. 14.

The law is well established in this circuit that testimony and statements are absolutely privileged when presented to legislative proceedings at the express request of those conducting such hearings. *Webster v. Sun Co., Inc.*, 731 F.2d 1 (D.C.Cir.1984). However, the Court did state in footnote 9 that: "This privilege insulates statements made only to the legislature or its investigative arm. Publication to individuals not associated with the legislature and republication by the legislator are not covered by this privilege." Thus, the court must determine whether dissemination of the state-

---

1. Indeed, there is even less of an indication of governmental influence over the employment decision here than there was in *Rendell-Baker*. In *Rendell-Baker* the governmental actor had the authority to approve of the initial hiring decision of the plaintiff. *See* 457 U.S. at 833, 102 S.Ct. at 2767. Despite this governmental influence over the hiring decision, the Supreme Court held that because the government had nothing to do with the decision to *terminate* Ms. Rendell-Baker, there was no state action in that decision. 457 U.S. at 841–42; 102 S.Ct. at 2771–2772.

ment pursuant to the Freedom of Information Act (FOIA) was privileged.

FOIA provides:

"... each agency upon any request for records which (A) reasonably describes the records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3) (1982).

■■■ Thus, a person need not title a request for government documents a "FOIA request". Absent an applicable exception, the government must provide the requested documents. Because defendants were required to produce the document, that production maintains absolute immunity.

■■■ As to plaintiffs' other defamation claims, summary judgment is inappropriate at this time. There is a dispute as to one of the alleged statements as to whether it was actually said or merely inferred from defendants' conduct; and plaintiffs are correct to note that even if some intra-corporate communications are conditionally privileged, a condition of that privilege is that the statements not be made with ill-will, an issue of fact. *See, e.g., Arsenault v. Allegheny Airlines, Inc.,* 485 F.Supp. 1373, 1379 (D.Mass.), *aff'd without opinion,* 636 F.2d 1199 (1st Cir. 1980), *cert. denied,* 454 U.S. 821, 102 S.Ct. 105, 70 L.Ed.2d 93 (1981). Plaintiffs have also alleged other instances of defamation which defendants did not address in their initial motion for summary judgment. *See* Plaintiffs' Opposition to Defendant Legal Service's Motion for Summary Judgment at 25–26. Those allegations present questions of fact as to whether each of the statements were made. Thus, summary judgment is not granted to defendants on those issues.

### D. *Emotional Distress Claims*

Defendants argue that plaintiffs' sole remedy for emotional distress is under the Federal Employment Compensation Act (FECA). That statute provides that "... the liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive ...". 5 U.S.C. § 8116(c) (1982). "Injury" is defined as including "... in addition to injury by accident, a disease proximately caused by the employment, and damage to or destruction of medical braces, artificial limbs, and other prosthetic devices ...". 5 U.S.C. § 8101(5) (1982).

■■ A claim for emotional distress clearly appears not to be an injury covered under FECA and therefore, FECA does not provide the exclusive remedy for emotional distress. *See Sullivan v. United States,* 428 F.Supp. 79, 81 (E.D.Wis.1977); *DeFord v. Secretary of Labor,* 700 F.2d 281, 290 (6th Cir.1983).

In *Sere v. Group Hospital Inc.,* 443 A.2d 33, 37 (D.C.Ct.App.1982), the District of Columbia Court of Appeals set out the three elements of the tort of intentional infliction of emotional distress: 1) extreme and outrageous conduct by defendant which 2) intentionally or recklessly 3) causes the plaintiff severe emotional distress. Defendants contend that their conduct was neither extreme and outrageous nor did plaintiffs suffer any emotional distress, and that therefore, summary judgment must be granted in their favor. Plaintiffs counter that defendants' conduct was extreme and outrageous and that it caused them distress.

■■■ It is true that, "in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery" is for the court to determine. *Sere,* 443 A.2d at 38. Examining the facts in this case in such a light, it appears that summary judgment is appropriate. There has been no evidence of sufficient severity of the distress to state a claim under the *Sere* test. The court also notes that there is grave doubt whether defendants' alleged conduct was extreme and outrageous, although the court does not decide defendants' motion on that ground.

An appropriate Order accompanies this Memorandum.

### ORDER

This matter came before the court on defendants' motions for summary judgment. For reasons stated in the accompanying Memorandum filed this day, it is, by the court, this 27th day of January, 1986,

ORDERED that defendants' motions for summary judgment are granted in all respects except as to plaintiffs' claims for defamation not based on the statement submitted to Congress and subsequently released under FOIA.