**Mary Alice MacNABB, Plaintiff,**

v.

**Carl C. MacCARTEE, Jr., M.D., Stephen S. Hass, M.D., and Richard M. Grossman, M.D., P.A., Defendants.**

**Civ. A. No. 92–0533 (JHG).**

United States District Court,
District of Columbia.

Oct. 21, 1992.

John M. Bredehoft, Elaine C. Bredehoft, Charlson & Bredehoft, Fairfax, Va., for plaintiff.

Hope B. Eastman, Theodore P. Stein, Bethesda, Md., William J. Virgulak, Jr., Fairfax, Va., for defendants.

ORDER

JOYCE HENS GREEN, District Judge.

On March 2, 1992, plaintiff Mary Alice MacNabb ("MacNabb") initiated this action. MacNabb's second amended complaint filed June 22, 1992 named as defendant, Stephen S. Hass, M.D., Carl C. Mac-Cartee, M.D., and Richard M. Grossman, M.D., P.A., a Maryland Corporation. The second amended complaint alleged that defendant terminated MacNabb's employment in its District of Columbia office in violation of the District of Columbia Human Rights Act, D.C.Code § 1–2501 *et seq.* and in violation of the common law of the District of Columbia.

Presently pending is defendant's motion to dismiss Count Five of the second amended complaint. In its motion, defendant contends that plaintiff's claim of unlawful termination fails to state a claim for which relief can be granted under the law of the District of Columbia. For the following reasons, defendants' motion is denied.

I. BACKGROUND

The following summarizes the pertinent facts as stated in MacNabb's second

amended complaint. On July 27, 1991, MacNabb was hired by defendant. In September, several months after being hired, MacNabb informed her supervisor, an employee of the defendant, that she was pregnant. At this time, MacNabb was not married. The supervisor, Elaine Gibson ("Gibson") suggested that MacNabb have an abortion, and after MacNabb's refusal, inquired why MacNabb would not have an abortion. MacNabb states that her relationship with Gibson deteriorated sharply following MacNabb's disclosure of her pregnancy to Gibson. The complaint further states that more than five months prior to the time MacNabb would leave on maternity leave, and over protest from MacNabb, Gibson replaced MacNabb at her regular work position with a temporary worker.

After replacing MacNabb in November 1991, MacNabb claims that Gibson repeatedly inquired about the father of the child she was carrying and the father's plans with regard to the expected child. MacNabb contends that Gibson made repeated "discriminatory and denigrating" public comments about MacNabb's pregnancy, including the suggestion that MacNabb have an abortion. MacNabb further contends that despite her request that her pregnancy be kept private, Gibson ordered MacNabb to "stand up and show everyone how big you're getting."

On December 20, 1991, defendant terminated MacNabb without notice.[1] The defendant told MacNabb that she was terminated because she was short with patients. According to plaintiff, however, plaintiff performed her job duties in an acceptable manner, receiving no negative performance evaluations. MacNabb claims that the reason given to her was a pretext for terminating her because of her sex, as exemplified by her pregnant condition and because of her family responsibilities, including her refusal to have an abortion. As a result, MacNabb contends that her termination was unlawful, in violation of public policy, as articulated in the District of Columbia Human Rights Act, Title VII, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## II. DISCUSSION

In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint must be presumed true and liberally construed in favor of plaintiff. *Shear v. National Rifle Association,* 606 F.2d 1251, 1253 (D.C.Cir.1979); 5A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357, p. 304 (1990). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Defendant has moved to dismiss plaintiff's unlawful termination claim as failing to state a claim for which relief can be granted under District of Columbia law. First, defendant argues that because plaintiff had no employment contract with defendant, plaintiff is an at-will employee, subject to termination at any time and for any reason or no reason. Second, defendant maintains that the D.C. Court of Appeals has recognized only one exception to the rule that at-will employees are subject to termination for any reason, and plaintiff simply does not fall within that narrow exception.

As an initial matter, plaintiff does appear to be an at-will employee, and thus plaintiff falls into the category of employees who, as a general rule, may be terminated for any or no reason. *See Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C. 1991). However, the D.C. Court of Appeals has determined that the general rule

---

**1.** It appears that no written employment contract was entered into between MacNabb and defendant.

is not without exception. *See id.* at 34. Specifically, the D.C. Court of Appeals has found a public policy exception for employees terminated because of the employee's refusal to violate the law. *Id.* Defendant does not contest the existence of an exception to the general rule, instead, according to the defendant, *Adams* makes it clear that *"only* where an employee is forced to choose between violating the law or losing his or her job will the Court entertain a public policy exception to the rule that employers may terminate at-will employees without giving rise to a cause of action for wrongful termination." Defendant's Motion to Dismiss at 2. However, defendant's characterization of *Adams* is too narrow.[2]

Defendant's broad statement that only one exception exists stems from its narrow interpretation of *Adams v. George W. Cochran & Co.* In *Adams,* the Court of Appeals was confronted with an employee terminated for refusing to violate a state law. *Id.* at 29–30. In this context, the court discussed "public policy" exceptions in general, as well as discussing the case at hand. Because the *Adams* court was presented with an entirely different factual scenario than that in the instant case, *Adams* does not control the outcome of this case. However, *Adams'* discussion of the public policy exception and prior D.C. Court of Appeals caselaw is helpful.

The *Adams* court noted that although public policy exceptions have been urged upon the court, the court had heretofore not recognized any such exceptions. As illustration, the court discussed *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.,* 565 A.2d 285 (D.C.1989). The *Sorrells* analysis of the public policy exception claimed in that case also provides insight relevant to the instant case. Although, in *Sorrells,* the court did not find the existence of a public policy exception, the decision was grounded firmly in the facts as established in that case. The court did not hold that it would not carve out an exception to the at-will employment doctrine in any case involving alleged breach of a statutorily declared public policy. Instead, the Court stated that "[e]ven if we were disposed to carve out an exception to the at-will employment doctrine, no " 'statutorily declared public policy' supports Sorrells' claim of wrongful discharge in *this* case." *Sorrells,* 565 A.2d at 289 (emphasis added).

The *Sorrells* decision was based upon appellant's invocation of three non-statutorily based policies as well as upon one statutorily based claim. In addressing the non-statutorily based policies, the *Sorrells* court stated that appellant should not be permitted to sue her employer because the employer has "deep pockets," or because a discharged employee is a burden to society, or because of possible attorney conflicts of interest. *Id.* Although, appellant also relied upon the D.C. Human Rights Act, she did

> not rely on any specific provision of the Human Rights Act; rather she asks this court to 'broaden' the policies expressed in the Human Rights Act and to fill a perceived "gap" in the Act.

*Id.* The court noted that appellant did not "show that [appellant] was the victim of discrimination based on any of the thirteen grounds listed in section 1–2512(a)." *Id.*

In contrast, in the instant case, MacNabb does not ask this Court to fill a gap in the D.C. Human Rights Act because she alleges that she was discriminated upon because of her sex and her family situation.[3] The

---

**2.** In *Gray v. Citizens Bank of Washington,* 602 A.2d 1096, 1098 (1992) (Schwelb, J., concurring), one judge expressly stated that the court "could not and did not hold in *Adams* that this was the *only* public policy exception, because that question was simply not presented." *Id.* at 1098.

**3.** Coupled with *Sorrells* and *Adams,* a recent D.C. Court of Appeals decision persuades this Court that the Court of Appeals would likely recognize other exceptions to the at-will doc-

trine if those exceptions are anchored in statutorily declared public policies. In *Gray,* 602 A.2d at 1097, the Court declined to recognize a public policy exception for an employee discharged for "whistle-blowing." *Id.* Nonetheless in discussing its reluctance to extend the exception recognized in *Adams,* the judge writing the first opinion noted that "we have so far insisted upon [an] anchor [to an officially declared public policy] before departing from a doctrine repeatedly characterized as 'long ... settled.' " In

D.C. Human Rights Act prohibits discrimination based on sex (including pregnancy and childbirth) and on family responsibilities. D.C.Code Ann. §§ 1–2501, 1–2505 (1988).

Other courts confronted with claims that discharge based on race or gender discrimination constitutes termination in contravention of a clearly expressed policy against race and gender-based discrimination have determined that such an exception exists.[4] *See Buttell v. American Podiatric Medical Assoc.*, 700 F.Supp. 592, 600 (D.D.C. 1988) ("Discrimination based on age, like discrimination based on race or gender, is a violation of the clear mandates of public policy," thus, a claim of breach of the implied covenant of good faith and fair dealing is not precluded by plaintiff's at-will employee status); *Alder v. Columbia Historical Soc'y*, 690 F.Supp. 9, 17 (D.D.C. 1988) ("[P]laintiff's claims [of race and gender discrimination], if proven, would appear to implicate a statutorily expressed public policy," thus, defendant's motion to dismiss the *wrongful discharge claim is denied.*).[5] Applying this logic to the instant case, plaintiff's claim of gender-based wrongful discharge, if proven, would appear to implicate a statutorily expressed public policy. Therefore, defendant's motion to dismiss is denied.

### III. CONCLUSION

Accordingly, for the reasons expressed above, it is hereby ORDERED that defendants' motion to dismiss is denied.

IT IS SO ORDERED.

---

the instant case, the D.C. Human Rights Act provides the necessary anchor.

argument that gender or race discrimination constitutes an exception to at-will employment.

**4.** Although these decisions were handed down prior to the D.C. Court of Appeals decision in *Adams, Adams* and *Gray* appear to demonstrate that when presented with the right circumstances, the D.C. Court of Appeals is willing to recognize public policy exceptions to the general rule. Unlike several district courts for the District of Columbia, the D.C. Court of Appeals apparently has not yet been presented with the

**5.** *See also Newman v. Legal Servs. Corp.*, 628 F.Supp. 535, 539 (D.D.C.1986) ("This court holds that the District of Columbia would recognize a public policy exception to the at-will employment doctrine," however, no clear mandate of public policy exists which prevents an employer from terminating an employee who disagrees with organizational or managerial ideology of the employer).