Cheryl A. DOMEN, Plaintiff,

v.

NATIONAL REHABILITATION HOSPITAL, INC.,
Defendant.

Civil Action No. 95–02143.

United States District Court,
District of Columbia.

April 29, 1996.

Douglas Taylor, for Plaintiff.

Gregory M. Murad, Silver Spring, MD, for Defendant.

### OPINION

ATTRIDGE, United States Magistrate Judge.

The plaintiff, Cheryl A. Domen (plaintiff or Domen), a registered nurse formerly employed by the defendant National Rehabilitation Hospital, Inc. (defendant or NRH) seeks monetary damages and reinstatement for wrongful termination by NRH. Before the Court is the defendant's motion to dismiss and/or for summary judgment. Pursuant to 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge for all purposes, including entry of judgment. Upon consideration of the motion, the opposition, replies and the entire record, the Court concludes that the defendant's motion for summary judgment should be granted.

### I.  FINDINGS OF FACT

Domen began her employment with NRH as a certified rehabilitation registered nurse on June 15, 1987. Compl. at ¶ 3, 7, 10. On March 31, 1992, an incident occurred concerning patient M.E. causing Domen to make entries in the nursing progress notes portion of M.E.'s hospital chart. Compl. at ¶ 20, 21, 24. Christine Babicki (Babicki), NRH's Clinical Service Director and Domen's supervisor wrote a note to Domen on September 3, 1992, in which she expressed her disapproval of the *contents* of Domen's progress note regarding M.E. and admonished Domen to cease "(e)ditorializing" in the nursing progress notes. Compl. at ¶ 26.

Several months later, on December 13, 1992, Domen again wrote comments in the nursing progress notes portion of the patient's medical chart about the treatment patient CN was receiving. Compl. at ¶ 39. On December 21, Babicki issued a written warning to Domen stating in part: "(Y)ou have been counseled in the past ... regarding your subjective method of documentation in patient's medical records ... You are entitled to your professional opinion; however, it was inappropriate for you to write this (personal comment) in the patient's medical record." Compl. at ¶ 50; Motion to Dismiss at Exh. 9. Domen responded in writing that Babicki's comments to her were "most inappropriate and offensive" and requested a rescission. Compl. at ¶ 53, Motion to Dismiss at Exh. 10. In reply, Babicki refused to rescind her warning and again ordered Domen not to document her personal views in the patient's chart. She admonished Domen to "discuss (her personal views regarding patient treatment) with the appropriate team members" but not in the patient's medical record. Compl. at ¶ 54, Motion to Dismiss at Exh. 11.

On April 4, 1993, yet another incident arose. This time regarding entries made in the chart of patient LB. In response to this incident, Babicki telephoned Domen at home concerning what she perceived was Domen's "inappropriate subjective statements" in LB's medical chart. Compl. at ¶ 57, 58; Motion to Dismiss at Exh. 12. During the telephone conversation, Babicki directed Domen to schedule a class in documentation the next day and upon completion of the class, to stop by to see her. Compl. at ¶ 59. It was during this telephone conversation that Babicki terminated Domen's employment. Compl. at ¶ 53. By letter of even date, Babicki notified Domen that she was discharged "for recent violation of the documentation policy, and insubordination ... during our phone conversation today". Compl. at ¶ 68.

The plaintiff, in her two count complaint, alleges that the defendant breached its contract of employment with her in violation of the defendant's policies of "Fair Treatment," "Progressive Discipline" and "Separation of Employment." Compl. Count II. She also contends that her employment discharge arose because of her compliance with the District of Columbia Municipal Regulations for Public Health and Medicine (DCMR). Consequently, her discharge was wrongful and in violation of public policy. Compl. Count I.

## II. ANALYSIS

### (a) Legal Standards

Both sides have attached affidavits and exhibits to the motion to dismiss or in the alternative for summary judgment and the opposition. Accordingly, pursuant to Fed. 12(C), the motion will be considered one for summary judgment and decided according to summary judgment criteria.

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994) (internal citations omitted). *See also* Fed.R.Civ.P. 56. The moving party has the burden of showing there is no genuine issue of material fact, and once that burden has been sustained, the opposing party must come forward with specific evidence creating a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue does not arise unless the evidence viewed in a light most favorable to the nonmoving party would allow a finder of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material" facts are facts in dispute that "might affect the outcome of the suit under the governing law." Whether a fact is material is determined by substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### (b) Employee At Will Doctrine

The plaintiff's alternate theories of liability shall be discussed in reverse order from that presented in her complaint. Domen contends that she was a permanent employee subject to discharge only "for cause" with the benefit of certain contractual rights; whereas, the defendant argues that she was an at-will employee subject to discharge for any or no reason provided the discharge was not for an unlawful reason.

The plaintiff alleges that certain written employment policies of the defendant, viz., Fair Treatment (Policy # 740.07). Opp. at attachment 3; Progressive Discipline (Policy # 740.14). Motion at Exh. 4; and Separation of Employment (Policy # 740.13). Motion at Exh. 5[1] vest her with certain substantive protections from involuntary discharge; that she relied on these policies to her detriment; and, therefore, a contract of employment arose with NRH which elevated her to the status of a permanent employee with contractual rights. She further argues that NRH breached its contract with her by disciplining and ultimately discharging her. Opp. at 22, 23.

The defendant contends that Domen was an at-will employee and that the hospital policy statements did not establish an employment contract nor rights separate and apart from those set out in the Hospital Employee Handbook which specifically stated:

> The contents of the Handbook are for general information, and its provisions are not conditions of employment. This Handbook is not intended to create, nor should it be construed to constitute an employment agreement between NRH and any of its employers. In all circumstances, employment is at will and may be terminated

---

1. The plaintiff's copy of the "Separation of Employment" policy statement attached to her opposition as attachment 4 postdates her termination. The defendant's "Progressive Discipline" and "Termination of Employment" policy statement exhibits antedate the termination. A review of the documents disclose no substantive differences between the post and antedated documents that are relevant to these proceedings. The "Fair Treatment" policy statement relied on by the plaintiff and annexed to her opposition at attachment 3 antedates her termination.

at any time for any reason, except as limited by federal and state law, and without any regard to cause.

Consequently, NRH argues, it incurred no legal liability to Domen by discharging her. Mot. at 12, 13.

■ The District of Columbia has long adhered to the employment at-will doctrine. Under that doctrine employment may be terminated for any reason or no reason at the will of either party in the absence of an express or implied contract concerning the duration of employment. *Rafferty v. Nynex Corp.,* 60 F.3d 844, 850 (D.C.Cir.1995); *Choate v. TRW, Inc.,* 14 F.3d 74, 76 (D.C.Cir. 1994) (citation omitted); *Elliott v. Healthcare Corp.,* 629 A.2d 6, 8 (D.C.1993).

■ In order to successfully oppose a properly presented motion for summary judgment, "the employee must present evidence of a 'clearly expressed' contractual intent on the part of both the employer and the employee." *Choate,* 14 F.3d at 76.

■ The plaintiff contends that the parties indeed intended to create an employment of "permanent" nature as evidenced by the "Separation of Employment" policy and, as such, she could only be terminated "for cause." Compl. at ¶ 93, 94. But, an analysis of that policy statement undercuts rather than supports the argument for permanent employment. Unlike the policy statement found in *Washington Welfare Ass'n. Inc. v. Wheeler,* 496 A.2d 613, 615 (D.C.App.1985), relied on by Domen, which specifically provided that "a permanent employee may only be terminated for good cause so long as the project to which he is assigned remains funded." The policy statement at issue specifically recognized

that all employees are not always suited to their position and some may be incapable of or unwilling to adhere to the stated job requirements and the required standards. NRH recognizes that there will be times when the organization will wish to terminate the employment relationship.

This appears to speak in terms of unilateral action by NRH. It puts the employee on notice that certain conduct is considered unacceptable behavior, including repeated disciplinary actions and that that conduct, as well as other specifically listed conduct, may result, at the option of the employer, in termination.

■ The mere listing in a policy statement of causes that may result in discharge does not create a "for cause" contract of life time employment. Such an interpretation of the policy statement would be unreasonable. Otherwise, every employee of NRH would be considered a life time employee. This conclusion is especially true when the Employment Handbook itself not only summarizes the policies relied on by the plaintiff but also specifically negates any intention to create an employment agreement. "In all circumstances, employment is at will and may be terminated at any time for any reason except as limited by federal and state law, and without regard to cause." Mot. at Exh. 13 at 43.

■ Moreover, Domen has not shown that by discharging her, NRH violated the "Separation of Employment" policy statement. Pursuant to this policy statement, an employee may be involuntarily discharged if: "(1) within the most recent 12–month period ... the employee has received at least two written warning notices and a third violation occurs which justifies termination." Domen received written warnings on June 11, September 3 and December 13, 1992, and an oral notice of still another violation on April 4, 1993 consistent with the policy statement requirements.[2]

Nor has Domen demonstrated that NRH violated any rights she may have had under the "Progress Discipline" policy statement. That policy statement required a verbal warning followed by two written warnings,

---

2. Domen contends in her affidavit that the April 4 violation was never discussed during the telephone conversation with Babicki and thereby attempts to create an issue of fact because Babicki's affidavit makes reference to such a con-

versation. No genuine issue of material fact arises since there is no need for the employee to be warned a third time. The policy statement only requires that a third violation occur which justifies termination.

all of which were provided between June 1992 and April 1993 [3].

■ Lastly, Domen's reliance on the "Fair Treatment" policy statement is inopposite. That policy statement provides opportunities for employees to express suggestions and voice complaints at progressively higher administrative levels. The burden rests with the employee to initiate these conferences. Domen does not allege that she ever attempted to communicate with Babicki's supervisors and was denied any opportunity to discuss her disagreements with Babicki's directives with any higher level supervisor. Accordingly, she cannot now complain that the defendant violated this policy.

The Court finds that Domen has failed to establish a "clearly expressed" contractual intent sufficient to rebut the presumption that her employment was "at will" *Choate,* 14 F.3d at 76. Nor has she demonstrated a violation of any of the defendant's policy statements upon which she relies. Therefore, the Court concludes that at all pertinent times, Domen was an at-will employee subject to termination with or without cause. Summary judgment will be granted in favor of NRH on Count II, the breach of contract count of her complaint.

### (c) Public Policy Issue

■ Domen claims that various sections of the District of Columbia Municipal Regulations dealing with Health Care and Community Residence Facilities required her to make appropriate entries in the nursing progress notes of patients, in spite of the admonishments and warnings of NRH. She argues that by directing her not to make such entries, NRH was directing her to violate District of Columbia public policy as expressed in these regulations. Since she was fired for not following the directives regarding charting, she was fired because she was complying with the regulations and public policy. Therefore, her discharge was in violation of public policy.

In *Adams v. George W. Cochran & Co.,* 597 A.2d 28 (D.C.1991), the District of Columbia Court of Appeals for the first time in this jurisdiction recognized a very narrow "exception to the employment-at-will doctrine." The Court ruled that a discharged at-will employee may sue his or her former employer for wrongful discharge when the *sole* reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation. "The burden of proving by a preponderance of the evidence that this was the *sole* reason shall be on the fired employee." *Id.,* at 34.[4]

In *Gray v. Citizens Bank of Washington,* 602 A.2d 1096 (D.C.1992) vacated and later reinstated by the *en banc* court, 609 A.2d 1143 (D.C.1992), the court emphasized the narrowness of the *Adams* decision holding that the exception to at-will doctrine created by *Adams* was limited to situations in which the employee "was forced 'to choose between breaking the law and keeping his job'." *Id.* at 1097.[5]

Domen argues that if she had not adhered to the dictates of the municipal regulations regarding charting, she would have violated the law. The threshold problem with this premise is that the regulations she relies on as imposing a duty on her have no applicability to her as a nurse employee of a health care and community residence facility.

---

3. Domen was warned in June 1992 and again in September and December 1992. Motion at Exhs 6 and 9 and opposition at attachment A

4. The specific officially declared public policy relied on in *Adams* was 18 DCMR § 602.4 (1987) making it illegal to operate a motor vehicle without an rejection sticker on the windshield.

5. The plaintiff premises her whole argument for her public policy claim on *MacNabb v. MacCartee,* 804 F.Supp. 378 (DCDC 1992). That opinion differs in many material respects from the case subjudice. First of all, that court was deciding a motion to dismiss not a motion for summary judgment Secondly, the public policy at issue concerned allegations of gender and racial discrimination both clearly prohibited by federal and local statutes and not, as here, managerial decisions. *See: Newman v. Legal Servs. Corp.,* 628 F.Supp. 535 (DCDC 1986). Lastly, in opinions decided after *MacNabb,* the District of Columbia Court of Appeals as well as the Court of Appeals for this Circuit have refused to broaden the limited exception to the at-will employment doctrine expressed in *Adams. See: Rafferty v. Nynex,* 60 F.3d 844, 851 (D.C.Cir.1995), *Thigpen v. Greenpeace, Inc.,* 657 A.2d 770, 771 (D.C. 1995).

The preamble to the regulations "set forth the requirements for the establishment, maintenance and operation of health care and community facilities." 22 DCMR § 3000.3 (1987). They are licensing requirements solely enforceable against the operator of these facilities. *Id.* at § 3002.1, *et seq.* It is the operator of the facility who is subject to inspection, supervision and investigation "to determine compliance with the applicable provisions of (these regulations)." *Id.* at § 3002.5. It is not Domen's duty to interpret and apply these regulations as she believes they should be applied. The appropriate District of Columbia municipal agency is responsible to monitor compliance with its regulations and the sanction for failing to comply with its regulations is revocation of the facilities license. *See* D.C.Code § 32–1305 (1981 & Supp.1995).

Moreover, Domen was not directed to make no entries. Rather, she was admonished for entering personal subjective opinions instead of reporting facts in the progress notes.

DCMR § 3228.7 states:

Medication errors and drug reactions shall be immediately reported to the patient's physician and an entry of the reaction shall be made in the patient's clinical record as well as on an incident report,

and § 3235.7(j) relied on by the plaintiff states:

Each clinical record, with all entries kept current, dated, and signed with full signature and discipline identification shall include, but not be limited to the following:

\*   \*   \*   \*   \*   \*

Detailed reports of any unusual occurrences, including medication reactions.

Domen's charting went far beyond the requirements of these regulations. On August 31, 1992, at 2400 hours after recording her observations of a patient, Domen went on to give a diagnosis:

These meds do potentiate (?) each other and have helped ↓ (decrease) pt's agitation but appear to be affecting his congestive status. ... Some of the ↑ s x s (increased signs and symptoms) that the pt is having could possibly be related to the

tegretol. It appears the tegretol has similar side effects such as, drowsiness, disturbances in coordination, confusion, fatigue visual halluc?, speech disturbance, and depression c̄ (with) agitation and talkativeness. Pt has been know to be hyperverbal prior to starting tegretol. Mot. at Exh. 7.

In September 1992, Christine Babicki, Domen's nursing supervisor counseled Domen concerning this entry. She was told to stick to objective facts and informed that the patient's physician complained that Domen appeared to be questioning his medical judgment. Opp. at Attachment A. Domen was directed by Babicki to record observations and not opine on treatment issues. Babicki aff. at 4 & 5.

Two months later, Domen recorded in the progress notes of yet another patient the following:

Writer is concerned that pts possible transfer to another facility s̄ (without) his knowing until that day will reinforce his mistrust, poss. feeling of betrayal & rejection may occur. Writer understands that c̄ pt being at (s) slight risk, that knowing the above info, he may act out in a (?) or (?) manner. Writer is concerned about all the restrictions that have been placed on pt per behavior mod program that he has little control over what he could have or could do. Pt could be manipulating staff because the only thing he has control over is living or dying. he sees being in the quiet room as punishment, not therapy. Mot. at Exh. 9/2nd page.

On December 21, 1992, Babicki wrote a memorandum to Domen entitled "Written Warning for Inappropriate Documentation" in which she said:

You have been counseled in the past (June 1992 and September 1992) regarding your subjective method of documentation in patient's medical records. On December 13, 1992 you wrote a note on patient Mr. C.N. in which you cited your opinion and questioned his behavioral program. ... You are entitled to your professional opinion; however, it was inappropriate for you to write this in the patient's medical record. Your responsibility is to document suc-

cinct, pertinent and objective data related to the patient's condition or behavior and form a nursing diagnosis. . . .

This is written warning notifying you that your documentation on Mr. C.N. written on December 13, 1992 is not acceptable and that in the future, I expect your documentation to be appropriate. Mot. at Exh. 9.

On yet another occasion, Domen recording in a patient's progress notes on April 4, 1993, 0330 hours:

Pt. is staff splitting & manipulating staff . . . Pt accomplished ? to manipulate and split staff, being disruptive . . . Possibly premorbid to have her needs met. Also per report pt creating some behavior between her mother & stepfather, creating conflict between them. i.e "you love him more than you love me . . ."

At 0615 hours she wrote:

how can agreements and contracts be made with pt c (about) issues concerning her behavior. Will try to monitor pt closely but it is difficult when pt can't participate actively in her rx treatment c (with) stm deficits. Mot. at Exh. 12 (t & 6 pages).

In response to these notations and other entries made in this patient's progress notes, Babicki, during a telephone conversation with Domen, again admonished her for **inappropriate** entries in the progress notes portion of a patient's hospital chart. Babicki aff. at 6. Domen denies that she was admonished regarding her documentation but does admit that during the conversation Babicki instructed her to schedule a session in a documentation class. Domen aff. at 12, 13.

It was during that telephone conversation that Babicki terminated Domen's employment. On the following day, Babicki notified Domen by letter of her involuntary termination citing her recent violations of the documentation policy as well as her insubordination during their telephone conversation of the day before.

Domen contends that her documentation in the patient's progress notes fully conformed with the various municipal regulations on which she relies and that if she failed to

record what she wrote she would be violating the law as set out in the municipal regulations, which represent public policy. Therefore, she argues, that even if she was an at-will employee she was discharged because she refused to violate public policy and, accordingly, she comes within the narrow exception created in *Adams* precluding the involuntary discharge of at-will employees who refuse to violate public policy.

■ However, none of the regulations relied on by Domen require that she make the type of entries for which she has been criticized. Her entries go far beyond the regulatory requirements. In limiting her entries so as to record observations and occurrences in an objective manner as directed by Babicki, Domen would not have violated any of the municipal regulations upon which she relies. Unreasonable interpretations of regulations by a party need not be accepted by a court in an effort to create an issue of fact.

■ Nor need the court accept any inferences drawn by the plaintiff which are unsupported by the facts set out in the complaint or in the documentation relied on in support of or in opposition to a motion for summary judgment. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 319–320 (2d ed. 1990). "(T)he Court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from [her] description of what happened, or if these allegations are contradicted by the description itself."

There is nothing in this record that would support the conclusion that if Domen had failed to record her subjective observations and opinions as written in the patient records for which she was admonished by NRH that she would have violated the public policy as reflected in the municipal regulations for Health Care and Residence Facilities. Therefore, the plaintiff has failed to show that the **sole** reason for her termination was her refusal to violate the law as expressed in the municipal regulations. Accordingly, the

motion for summary judgment on Count 1 will also be granted.

### Conclusion

Plaintiff has failed to carry her burden of creating a genuine material issue of fact that the *sole* reason for her termination was her refusal to violate the law. *Adams,* 597 A.2d at 33. Moreover, she has failed to create a genuine material issue of fact that she was other than an at-will employee terminable for any reason or no reason.

Accordingly, the defendant's motion for summary judgment is granted.